IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLARICE JEFFERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-840-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Clarice Jefferson ("Plaintiff" or "Jefferson") applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income under Title XVI §§1381-1383c, on May 29, 2008. Tr. 18. After being denied on September 5, 2008, Jefferson timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on June 21, 2010. Tr. 18, 29. Jefferson subsequently petitioned for review to the Appeals Council who rejected review of Jefferson's case on August 24, 2011. Tr. 1. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court REVERSES and REMANDS the Commissioner's decision.

**I. NATURE OF THE CASE**

Jefferson seeks judicial review of the Commissioner's decision denying her

application for disability insurance benefits and supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Jefferson, age 44 at the time of the hearing, has completed the 11th grade and is currently working toward earning a GED. Tr. 34, 42. Jefferson performed past relevant as a garment folder (unskilled, light) and fast food worker (unskilled, light). Tr. 27. Jefferson has not engaged in substantial gainful work activity since her alleged disability onset date of December 25, 2007. Tr. 20. Jefferson meets the insured status requirements

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

of the Social Security Act through June 30, 2011.  *Id.*   Jefferson claims she is unable to work because of pain in her right arm and elbow and in her right hip, leg, and knee.  Tr. 20, 25.  Jefferson rates her average daily pain as a level seven to eight on a ten point scale with ten being the highest level of pain.  Tr. 24.  Jefferson's alleged disability stems from a motor vehicle accident that occurred in 1996.  Tr. 20.

Jefferson concedes that the issue on appeal does not concern medical evidence; thus, the Court does not find it necessary to summarize the medical evidence.  *See* Doc. 14 at 6.  However, the ALJ's findings are of particular interest.  The ALJ found that Jefferson has the following severe impairments: osteoarthritis - traumatic arthritis, right knee; status post fractures to upper and lower extremities; chronic headaches; left eye lateral strabismus; and periodontal disease.  Tr. 20 (citing 20 CFR 404.1520(c) and 416.920(c)).  However, the ALJ found that Jefferson "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 23.  As a result, the ALJ found that Jefferson has the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for additional restrictions" such as "work that affords a sit/stand option" as well as "[moderate limitation] in her ability to handle objects using her right upper extremity."  Tr. 24.  The ALJ requested the testimony of a VE who testified that Jefferson:

> would be able to perform the requirements of representative occupations such as companion (DOT# 309.677-010), automobile self-serve service station attendant (DOT# 915.467-010), and telephone solicitor (DOT# 299.357-014).  The companion occupation is light and unskilled and is represented by approximately 3830 jobs in Alabama and 6007 jobs in the

> U.S. The automobile self-serve service station attendant is light an unskilled and represented by more than 1360 jobs in the state and 96,000 jobs nationwide. The telephone solicitor occupation is sedentary and unskilled and represented by approximately 5240 jobs in the state and 427,000 jobs in the national economy. Dr. McDaniel testified that in his experience, these jobs would accommodate a sit/stand option at the worker's discretion.

Tr. 28. Based upon the VE's testimony, the ALJ concluded that Jefferson is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and reached a finding of "not disabled." *Id.*

## V.  ISSUES

Jefferson raises one issue for judicial review:

> Whether substantial evidence supports the final decision of the Defendant, the Commissioner of Social Security, that Plaintiff, Clarice Jefferson, was not disabled and thus not entitled to Disability Insurance Benefits under Title II of thbe Social Security Act, 42 U.S.C. §§ 416(I), 423(d) and/or entitled to Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1382, 1382c(a).

*See* Doc. 14 at 1-2.

## VI.  DISCUSSION

**A.    The ALJ failed to elicit a reasonable explanation for the conflict with the DOT before relying on the VE's testimony.**

Jefferson alleges that the ALJ's decision was not supported by substantial evidence because the ALJ failed to resolve a material conflict in the evidence. *See* Doc. 14 at 7. Specifically, the VE provided three occupations that exist in the national economy that Jefferson could perform despite the finding that she has the residual functional capacity to perform light work. *Id.*; Tr. 24. The three listed occupations are all described in the Dictionary of Occupational Titles ("DOT") as semi-skilled employment. *See* Doc. 14 at

8-9. However, the ALJ and the VE classified Jefferson's past relevant work as unskilled, based on the DOT listings. Tr. 27, 45. Jefferson asserts that she is unprepared to enter into a semi-skilled occupation because of her unskilled background. *See* Doc. 14 at 8. Jefferson contends that the ALJ failed to resolve the conflict between the VE testimony and the DOT listings, and thus the ALJ's decision is not supported by substantial evidence. *See* Doc. 14 at 15.

The ALJ "has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989); *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). This burden may sometimes be met through exclusive reliance on the grids. *Id*. at 1201-02. However, "'exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.'" *Id.* at 1202 (quoting *Walker v. Bowen*, 826 F.2d 996, 1002–03 (11th Cir. 1987) (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985). Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (citing *Cowart v. Shweiker*, 662 F.2d 731, 736 (11th Cir. 1981). "'It is only when the claimant can clearly do unlimited types of light work, ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.'" *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir.

Unit A, March 1981)).  "The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony." *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir.1986).  If an ALJ finds that a claimant cannot perform a full range of work within a given exceptional level, VE testimony is the preferred method to determine whether the claimant's non-exceptional impairments further diminish her ability to work at that level 20 C.F.R. §§ 404.1561, 416.961; Social Security Ruling (SSR) 83–12; *see also Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995).

In *Jones v. Apfel,* the court addressed the issues surrounding conflicts between the DOT and the testimony of a VE.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (The ALJ relied upon VE testimony regarding the range of sedentary work available to the plaintiff, even those that conflicted with the DOT, while considering the specific limitations of the plaintiff). The Eleventh Circuit noted that in the Sixth Circuit the "social security regulations do not require the Commissioner or the VE to rely on classifications in the DOT." *Id*. (citing *Con v. Sec'y of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995).  This frees courts to rely on the VE's testimony "even if it is inconsistent with the DOT." *Id*.  The Eleventh Circuit also noted that the Eighth and the Ninth Circuits "hold that the DOT controls unless it can be 'rebutted ... with VE testimony that shows that 'particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform.'" *Id*. (quoting *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)).  If the

VE can "determine whether there are jobs in the region which the claimant can perform with [their] precise disabilities or limitations" the court then held that "the DOT *does not control*." *Id*. (citing *Montgomery*, 69 F.3d at 277) (emphasis added).

Subsequent to the *Jones v. Apfel* decision the Social Security Administration passed *SSR 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*. In the pertinent history of this administrative regulation it states that, "[q]uestions have arisen about how we ensure that conflicts between occupational evidence provided by a VE or a VS and information in the DOT [] are resolved." SSR 00–4p; 65 Fed. Reg. 75759 (Dec. 4, 2000). "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Leonard v. Astrue*, 487 F.Supp.2d 1333, 1339 (M.D. Fla. 2007) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9, 110 S.Ct. 885, 891 n. 9, 107 L.Ed.2d 967 (1990) (quoting 20 C.F.R. § 422.408)(1989)).

In *Leonard v. Astrue*, the plaintiff argued that because SSR 00-4p was enacted after the *Jones* opinion, that the new law "requires the ALJ to elicit a 'reasonable explanation' for a conflict between the VE testimony and the DOT." *Id.* at 1338. The court noted that in SSR 00-4p "the Social Security Administration recognized that the VE's testimony should generally be consistent with the information contained in the DOT" but when a conflict between the two arises that "the SSR directs that the ALJ 'must elicit a reasonable explanation for the conflict before relying on the VE['s testimony].'" *Id*. at 1338-39. "Moreover, the ALJ is obligated to inquire on the record as to whether

there are any inconsistencies between a VE's testimony and the DOT." *Id*. at 1339. Finally, any conflict must be addressed and resolved by the adjudicator and explained how the conflict was resolved. *Id*. On appeal of the *Leonard* decision, the Eleventh Circuit held that SSR 00-4p requires that "the ALJ 'must elicit a reasonable explanation for the conflict before relying on the VE['s testimony].'" *Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011).

Here, the ALJ found that Jefferson has the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for additional restrictions" such as "work that affords a sit/stand option" as well as "[moderate limitation] in her ability to handle objects using her right upper extremity." Tr. 24. The ALJ found that "comparing the mental and physical demands of the claimant's past relevant work with her residual functional capacity," Jefferson is unable to perform any of her past relevant work. Tr. 27. The ALJ heard the testimony of a VE to determine if there is other work in the national economy that Jefferson could perform. Tr. 28. The VE testified that Jefferson:

> would be able to perform the requirements of representative occupations such as companion (DOT# 309.677-010), automobile self-serve service station attendant (DOT# 915.467-010), and telephone solicitor (DOT# 299.357-014). The companion occupation is light and unskilled and is represented by approximately 3830 jobs in Alabama and 6007 jobs in the U.S. The automobile self-serve service station attendant is light an unskilled and represented by more than 1360 jobs in the state and 96,000 jobs nationwide. The telephone solicitor occupation is sedentary and unskilled and represented by approximately 5240 jobs in the state and 427,000 jobs in the national economy. Dr. McDaniel testified that in his experience, these jobs would accommodate a sit/stand option at the worker's discretion.

*Id.* Based upon the VE's testimony, the ALJ concluded that Jefferson is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and reached a finding of "not disabled." *Id.*

Jefferson asserts that the VE's testimony on the three occupations that the VE believes she can perform is inconsistent with the regulatory policies and definitions. *See* Doc. 14 at 10. The automobile self-serve service station attendant position is defined in the DOT as medium in exertional demands and as a semi-skilled occupation with a Specific Vocational Preparation ("SVP") level of three.[5] DOT Code 915.467-010; *See* Doc. 14 at 9, n. 46. The companion position is defined in the DOT as light in exertional demands and as a semi-skilled occupation with an SVP level of three. DOT Code 309.677-010; *See* Doc. 14 at 9, n. 46. The telephone solicitor position is defined in the DOT as sedentary in exertional demands and a semi-skilled occupation with an SVP level of three. DOT Code 299.357-014; *See* Doc. 14 at 9, n. 46. Jefferson's past relevant work as a garment folder and fast food worker are both classified as light in exertional demands and as unskilled occupations with SVP levels of two. DOT Codes 789.687-066, 311.472-010; Tr. 44-45. Jefferson contends that because her past relevant work is classified as unskilled, she is vocationally unprepared to enter into semi-skilled positions. *See* Doc. 14 at 8. Social Security Ruling 82-41 defines semi-skilled work as:

> Semiskilled occupations are more complex than unskilled work and distinctly simpler than the more highly skilled types of jobs. They contain more variables and require more judgment than do unskilled occupations. Even though semiskilled occupations require more than 30 days to learn,

---

[5] Specific Vocational Preparation, as defined in Appendix C of the DOT, is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."

> the content of work activities in some semiskilled jobs may be little more than unskilled. Therefore, close attention must be paid to the actual complexities of the job in dealing with data, people, or objects and to the judgments required to do the work.

Jefferson asserts that because of the conflict between the VE's testimony and the DOT, and the ALJ's failure to resolve the conflict, the ALJ's decision was not supported by substantial evidence, and this Court agrees.

During his examination of the VE, the ALJ asked if the VE's testimony is "in accordance with the [DOT]." Tr. 50. The VE responded "Yes, sir, except for the sit/stand option because the DOT does not recognize that and I was basing that on my experience seeing the jobs.." *Id.* Although the ALJ properly met his obligation "to inquire on the record as to whether there are any inconsistencies between a VE's testimony and the DOT," his ultimate conclusion was based on his reliance of mistaken testimony. *Leonard*, 487 F.Supp.2d at 1339. When a conflict between the VE's testimony and the DOT exists, the Eleventh Circuit requires the ALJ to "'elicit a reasonable explanation for the conflict before relying on the VE['s testimony].'" *Leonard*, 487 F.Supp.2d at 1338-39 (quoting SSR 00-4p). Any conflict must be addressed and resolved by the ALJ and explained how the conflict was resolved. *Id.* at 1339. The Government argues that the VE provided an explanation as to why the listed occupations "were amenable to performance without significant skills or training, as in unskilled work." *See* Doc. 17 at 13. The Government points to the VE's testimony in which after listing each of the three occupations, he stated that they were "entry level" positions, as well as the VE's use of his "experience and expertise" to select the

occupations.  *See* Doc. 17 at 13.

The Court does not find this argument compelling.  The VE's mere mention that an occupation is "entry level" is not a sufficient explanation to resolve the conflict between the VE's testimony and the DOT that exists in this case.  During his testimony, the VE completely failed to recognize that a conflict exists between Jefferson's unskilled background and the semi-skilled positions listed.  Additionally, the VE incorrectly stated that the automobile self-serve service station attendant position is classified as having a light exertional demand.  The DOT classifies an automobile self-serve service station attendant position as a medium exertional demand.  Tr. 48; DOT Code 915.467-010.  Because of such the Court does not find that the mere mention of the three jobs as being "entry level" while in the process of listing each position is a "reasonable explanation" sufficient enough to resolve the conflict between the VE's testimony and the DOT as required by SSR 00-4p and the Eleventh Circuit.

Therefore, the Court finds that the ALJ's vocational findings were not based on substantial evidence.

## VII.  CONCLUSION

Accordingly, this case will be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this opinion.  A separate order will be entered.

DONE this 25th day of September, 2012.

> /s/ Terry F. Moorer
> TERRY F. MOORER
> UNITED STATES MAGISTRATE JUDGE